(113 So. 782)

No. 28075.

### NEW YORK LIFE INS. CO. v. HYMEL et al.

July 11, 1927.

*(Syllabus by Editorial Staff.)*

1. Mortgages ⬯563—Recorded mortgage, authorizing mortgagor's sale of sugar house for not less than $15,000, did not warrant assumption that sale could not be made for less amount with mortgagee's consent.

Subsequent mortgagee *held* to have no right to assume that provision of recorded prior mortgage, giving mortgagor privilege to sell sugar house and apply proceeds to last of notes if sale should bring not less than $15,000, would require that such sale could not be made for less sum with consent of prior mortgagee.

2. Mortgages ⬯563—Prior mortgagee may consent to sale without obtaining subsequent mortgagee's consent.

As respects right to proceeds of sale of mortgaged property, prior mortgagee *held* not required to obtain consent of subsequent mortgagee to sale of sugar house on mortgaged property, before granting its own consent, receiving price, and applying it to mortgage debt.

3. Mortgages ⬯563—Prior mortgagee held entitled to proceeds of foreclosure sale, notwithstanding consent to sale of sugar house for less sum than mortgage provision recited.

Prior mortgagee *held* entitled to proceeds of sale of mortgaged plantation in foreclosure, though it consented to previous sale of sugar house for $5,200 without consent of subsequent mortgagee, and recorded prior mortgage authorized sale of sugar house by mortgagor provided sale brought at least $15,000.

Appeal from Twenty-Third Judicial District Court, Parish of St. James; Sam A. Le Blanc, Judge.

Proceeding by the New York Life Insurance Company against Honorat Hymel, with a third opposition by the Ascension Bank & Trust Company. Judgment for plaintiff, and the third opponent appeals. Affirmed.

C. C. Weber, of Donaldsonville, for appellant Ascension Bank & Trust Co.

Simmons & Simmons, of Napoleonville, and R. B. Logan, of New Orleans, for appellee New York Life Ins. Co.

OVERTON, J. Plaintiff instituted this proceeding by way of executory process to foreclose a special mortgage on a plantation in the parish of St. James, known as the St. James plantation, granted by defendant to secure forty-two promissory notes, made by him, payable to bearer, bearing 6 per cent. per annum interest from date, and containing the usual clause of 10 per cent. attorney's fees. The mortgage contains the pact de non alienando. The executory process was issued to foreclose the mortgage only as to the thirty-five of these notes, last maturing; the remainder, it is said, having been paid. The mortgage securing the forty-two notes was granted in favor of the Mortgage & Securities Company of New Orleans, and plaintiff alleges that it is the holder for value before maturity of the thirty-five of these, appearing in those proceedings, aggregating $33,500, bearing interest and containing the clause as to attorney's fees, stated above.

The mortgage contains the provision reading as follows:

"The privilege is granted to the mortgagor to sell the sugar house and contents thereof, the

proceeds derived from the sale thereof to be applied upon the payment of the last of said notes in conformity with the terms of said mortgage, provided said sale shall not be made for a sum less than fifteen thousand no/100 dollars."

Nearly a year prior to the institution of the proceedings by executory process, the sugar house, mentioned in the foregoing excerpt, was sold at private sale by the St. James Estate, Inc., which at that time was the owner of the plantation, for $5,200, plaintiff consenting to the sale for that amount, the proceeds to be applied on the indebtedness due it.

The Ascension Bank & Trust Company is the holder of two promissory notes, secured by mortgage, granted by defendant, junior in rank to the mortgage owned by plaintiff. The bank, as the holder of the mortgage notes, while the plantation was being advertised for sale in the proceeding by executory process, filed a third opposition, claiming that plaintiff had no right to the prejudice of the mortgages held by it to consent to the sale of the sugar house and its contents for less than $15,000, the amount recited in the mortgage, declared on by plaintiff, that plaintiff should be required to credit the indebtedness, which it alleges is due it, with said sum, imputing it to the payment of the last notes to mature, as provided in the foregoing excerpt from the mortgage, and that, when this is done, there will be sufficient remaining out of the proceeds of the sale, after the payment of plaintiff, to satisfy its claim, or a large part thereof.

Before filing its answer to this opposition, plaintiff excepted to the opposition on the ground that it discloses no cause of action; the exception being based upon the theory that whatever right the bank may have, resting on the allegations contained in the opposition, cannot be asserted by third opposition. The exception was overruled by the trial court. The conclusion we have reached makes it wholly unnecessary to consider the exception.

Therefore, taking up for consideration the merits of the case, it appears that nearly a year before plaintiff seized the plantation, the St. James Estate, Inc., the then owner of the plantation, through its president, Mr. Loisell, took up with the Mortgage & Securities Company, which represented plaintiff, the matter of disposing of the sugar house and its contents, which latter consisted of machinery. It seems that Loisel was influenced in taking this step by the fact that the sugar house had not been used for several years, and that insurance could not be obtained upon it. He therefore asked for bids on the property. The best bid he received was for $5,200, and he advised the Mortgage & Securities Company to that effect. The Mortgage & Securities Company submitted the matter to plaintiff, which it was representing, and after some correspondence, plaintiff consented to release its mortgage, so far as it affected the sugar house, and to permit the sale of that building and its contents for the sum mentioned, the proceeds to be applied on plaintiff's mortgage. While plaintiff was considering the matter, Loisel also spoke to Mr. J. Lembermuth, who was then president of the Ascension Bank & Trust Company, concerning the sale, telling Lembermuth what he could get for the sugar house. Lembermuth, who has since died, seems to have favored the sale. The sale was made by notarial act by the St. James Estate, Inc., for $5,200, the Mortgage & Securities Company intervening in the act to take cognizance of it and to accept the purchase price for the purpose of applying it on the mortgage, which plaintiff holds, and which was granted in favor of the securities company. Later, at the instance of the St. James Estate, Inc., the purchase price was imputed to the payment of those of the notes which were then due and unpaid, and not to the last to mature as provided in the mortgage. At the foreclosure sale, the plantation brought $32,000.

The position of the bank that plaintiff should be required to credit the last of the notes, to mature, with $15,000, the amount for which it was agreed in the mortgage that the sugar house and its contents might be sold, is based on two grounds. One of these is that the mortgage upon which plaintiff is foreclosing, containing the excerpt, quoted above, referring to the right to sell the sugar house, was of record in the mortgage books of the parish where the plantation is situated, when defendant, who was then owner of the plantation, granted the mortgages which the bank holds. The inference seems to be drawn from this that the recordation of the mortgage, which plaintiff holds, containing the foregoing excerpt, was notice to the world that the sugar house and its contents would not be sold at private sale for less than $15,000, and then, when so sold, the price would be imputed to the payment of the notes, which that mortgage secured, last to mature, and that the bank had the right to act upon the faith of that notice, when it agreed to accept from defendant the mortgages that it holds. The second of these grounds is that, when the Mortgage & Securities Company intervened in the sale of the sugar house, granting its consent to the sale, and receiving the price, it did so in fact, as the agent of plaintiff, and that plaintiff had no right, through its agent or otherwise, to participate in the sale, or to consent to its being made for less than the $15,000, recited in the mortgage which it holds, nor to impute the price otherwise than as provided in that mortgage, without the bank's consent, which, it is insisted, does not appear to have been granted.

### Opinion.

[1-3] The provision, relative to the sale of the sugar house, is one purely for the benefit of the parties to the mortgage, and future holders of the notes secured by it, as well as for the benefit of those who might acquire the plantation subject to the mortgage, and not for the benefit of the bank or any one else. The bank, therefore, had no right to assume that, if the sugar house was sold at private sale, it would not be sold for less then $15,000. In addition to this, plaintiff was not called upon to obtain the bank's consent to the sale of the sugar house, with its contents, before granting its own consent and receiving the price. Moreover, pretermitting all question as to the right of Lembermuth to grant verbally or otherwise the consent of the bank to the sale, the evidence does not show that the sugar house, with its contents, was worth any more than the sum for which it was sold, but, to the contrary, indicates that it brought all that it was worth. After all, as between the bank and plaintiff, the bank received the only possible benefit it could expect by reason of the fact that the sugar house was on the plantation, when the mortgage which plaintiff holds, which was the ranking one, was credited with the full price received, and thereby reduced to that extent. And this is so, although a year later, when the plantation was sold by the sheriff at the foreclosure sale, it developed, because of the price obtained for the plantation, which was insufficient to pay plaintiff in full and to pay the bank, even in part, that this crediting was, after all, of no real advantage to the bank. As to whether the price received for the sugar house should have been imputed to the last notes to mature, instead of to those already due, is a matter of no consequence, since all the notes bore the same rate of interest from the same date.

The trial court rendered judgment rejecting the bank's third opposition, and ordering paid to plaintiff that part of the proceeds of the sale of the plantation, still in the hands of the sheriff, awaiting the disposition of this opposition The judgment is correct.

For these reasons, the judgment appealed from is affirmed.